UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE FRANK OGLESBY, | No. 2:18-cv-0113 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding pro se and in forma pauperis, with a civil rights complaint under 42 U.S.C. § 1983. Plaintiff has been provided two opportunities in which to plead sufficient facts to state an Eighth Amendment claim. Despite such opportunities, the undersigned finds that plaintiff fails to do so. Accordingly, the court recommends that plaintiff's second amended complaint be dismissed without prejudice, but without leave to amend.

II. Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

III. Plaintiff's Second Amended Complaint

On July 29, 2017, plaintiff fell in the shower and suffered injuries. Plaintiff alleges that he is disabled as defined under the Americans with Disabilities Act ("ADA"), and therefore qualifies for shower assistance and to be provided safe equipment such as a shower chair, shower rails, shower floor grips, and wheelchair accessibility. (ECF No. 16 at 5.) Plaintiff claims that each named defendant knew of plaintiff's medical history and condition because it is readily accessible in the California Department of Corrections ("CDCR") computer, yet defendants "blatantly disregarded CDCR's policy and procedure," thus violating plaintiff's Eighth and Fourteenth Amendment rights. (ECF No. 16 at 5.) As a result of the fall, plaintiff contends he suffered injuries to his head, neck, lower back and right shoulder. (ECF No. 16 at 7.)

In his first claim, plaintiff alleges that the Secretary of CDCR and Warden Eric Arnold violated plaintiff's Eighth and Fourteenth Amendment rights, CDCR policy and procedure, and

2

| | |
|---|---|
| 1 | the ADA when they failed to properly house plaintiff according to his serious medical needs. |
| 2 | Plaintiff claims that the defendants' deliberate indifference led to his fall in the shower while |
| 3 | using a defective shower chair provided by defendants because under policy and procedure and |
| 4 | the ADA, they were required to monitor, repair, or replace equipment when needed. Defendants' |
| 5 | failure to properly maintain the shower chair caused serious injury to plaintiff when he fell |
| 6 | backwards, hitting his head, neck, lower back and right shoulder, causing severe pain. |
| 7 | In his second claim, plaintiff claims that defendants John Doe one, John Doe two and Jane |
| 8 | Doe violated plaintiff's Eighth Amendment rights when they provided plaintiff with a defective |
| 9 | shower chair. Such Doe defendants violated CDCR policy and procedure and the ADA by |
| 10 | putting a defective shower chair in the shower for plaintiff to use, and failing to monitor the ADA |
| 11 | equipment, and follow CDCR policy and procedures. (ECF No. 16 at 7.) |
| 12 | In his third claim, plaintiff alleges that defendant Dr. Dhaliwal was deliberately indifferent |
| 13 | to plaintiff's serious medical needs by failing to follow up on plaintiff's condition when plaintiff |
| 14 | notified the LVN on July 30, 2017, that plaintiff's condition had worsened overnight. Plaintiff |
| 15 | suffers from headaches, neck and lower back pain, walking difficulty from weakness and shaking |
| 16 | on the left side, severe stroke-like symptom[s], hemiparesis, and "migraines as we fatigue." (ECF |
| 17 | No. 16 at 5.) Dr. Dhaliwal saw plaintiff on July 29, 2017, after plaintiff fell in the shower, |
| 18 | prescribed Tylenol for plaintiff's headache, and told plaintiff he would be seen by plaintiff's |
| 19 | primary care physician ("PCP") on Monday due to "plaintiff's follow-up schedule[d] visit." |
| 20 | (ECF No. 16 at 8.) But plaintiff now alleges that Dr. Dhaliwal knew that plaintiff's new injuries |
| 21 | would not be addressed by plaintiff's PCP on Monday because plaintiff "would only be seen for |
| 22 | that follow[-up] only," not for his new injuries. Indeed, plaintiff alleges that his PCP informed |
| 23 | plaintiff "that he would need to see Dr. Dhaliwal about his injury." (Id.) Plaintiff was not seen |
| 24 | again by Dr. Dhaliwal, but instead was transferred on an unidentified date to CMF. Plaintiff |
| 25 | alleges that such failure to follow up caused plaintiff "serious harm," (ECF No. 16 at 8), including |
| 26 | severe pain (id. at 9). |
| 27 | Plaintiff seeks, *inter alia*, money damages. |
| 28 | //// |

IV. Analysis

    A. 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified School District, 90 F.3d 367, 370 (9th Cir. 1996)).

To state a claim under § 1983, a plaintiff must demonstrate that there is an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); Preschooler II v. Clark Cnty. Sch. Bd. of Trustees., 479 F.3d 1175, 1183 (9th Cir. 2007).

Although supervisory government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior, Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), they may be individually liable under Section 1983 if there exists "either (1) [the supervisor's] personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury. Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim -- and, more specifically, on the state of mind required by the particular claim -- not on a generally applicable concept of supervisory liability. Oregon State University Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

B. Eighth Amendment -- Conditions of Confinement or Failure to Protect

Plaintiff's first claim alleges that defendants failed to provide plaintiff with the "basic necessities," violating the Eighth Amendment.[1][2] (ECF No. 16 at 6.) The gravamen of plaintiff's claim is that defendants Secretary and the Warden are liable because they failed to properly house

---

[1] Plaintiff also cites the Fourteenth Amendment, which is not an appropriate vehicle to raise claims regarding prison-related injuries that "implicate a more specific constitutional right" protected by the Eighth Amendment. See Graham v. Connor, 490 U.S. 386, 393 (1989). Rather, the Supreme Court has emphasized that the Eighth Amendment's cruel and unusual punishments clause is the appropriate mechanism for raising claims that challenge inhumane or unsafe conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).

[2] Plaintiff also mentions the ADA throughout his pleading. However, the mere mention of the ADA, without more, does not state a cognizable claim under Title II of the ADA. Title II provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132 (2006). Here, plaintiff filed a civil rights complaint under 42 U.S.C. § 1983, and pursues claims under the Eighth Amendment. (ECF No. 16, *passim*.)

plaintiff following his release from the hospital, and failed to properly maintain or ensure the maintenance of the ADA shower chair provided to plaintiff, resulting in his fall in the shower. In his second claim, plaintiff alleges that the Doe defendants violated the Eighth Amendment by providing plaintiff with a defective shower chair, and failed to properly monitor or maintain such ADA equipment.

1. Governing Standards

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong.

First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834. "[R]outine discomfort inherent in the prison setting" does not rise to the

6

level of a constitutional violation. Johnson, 217 F.3d at 731. Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731; Hearns v. Terhune, 413, F.3d 1036, 1042 (9th Cir. 2005).

Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. This "involves a two-part inquiry." Thomas, 611 F.3d at 1150. "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Id. (quoting Farmer, 511 U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Thomas, 611 F.3d at 1150 (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (citing Farmer, 511 U.S. at 844) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.") Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

The reach of the Eighth Amendment extends to a prisoner's basic sanitation. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Such right to sanitation includes the right to shower. See, e.g., Toussaint v. McCarthy, 801 F.2d 1080, 1110-11 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. at 472.

////

7

Further, prison officials must take reasonable measures to guarantee the safety of inmates. See Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). A prison official can be liable for failing to protect inmates only if: (1) there is an "excessive" and "substantial risk of serious harm," and (2) the official is subjectively aware of that risk but deliberately ignores it. Farmer, 511 U.S. at 828-29.

2. Discussion

Initially, the undersigned observes that the Ninth Circuit has found that "[e]ven if the floors of the shower are slippery and [the inmate] might fall while showering, "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (citation omitted). Courts generally conclude that prisoners fail to state a constitutional claim regarding slip and fall accidents in prisons, and "have reached this conclusion, even where the hazard has existed, and been known to prison officials, for years and where the prisoner was required to use the dangerous location, such as a bathroom." Pauley v. California, 2018 WL 5920780, at *4-5 (E.D. Cal. Nov. 13, 2018) (collecting cases); Bozeman v. Santoro, 2018 WL 3532909, at *5 (E.D. Cal. July 23, 2018) (dismissing disabled inmate's slip-and-fall claim under ADA and Eighth Amendment with leave to amend); but see Corso v. Doe, 478 F. App'x 444, at *1 (9th Cir. 2012) (inmate sufficiently alleged an Eighth Amendment "slip-and-fall" claim by alleging prison officials knew that other inmates had also been injured on the slippery shower floors yet failed to take protective measures) (citing Farmer, 511 U.S. at 847 (prison official violates the Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm); and Frost, 152 F.3d at 1129 ("Slippery floors without protective measures could create a sufficient danger to warrant relief.").).

Here, plaintiff does not allege that he was not provided a shower chair. Rather, plaintiff claims he fell in the shower while using a defective shower chair, and his claims are based on this one isolated incident. Despite multiple opportunities to amend, plaintiff has failed to allege any facts demonstrating that a particular defendant was aware the shower chair presented a substantial risk of harm yet deliberately ignored or failed to reasonably respond to the risk, causing plaintiff

harm. Absent facts not pled here, defendants cannot be deliberately indifferent where they were unaware the shower chair was defective. See Frost, 152 F.3d at 1129 (prison officials were deliberately indifferent where they knew plaintiff fell several times using crutches in the shower and did not provide accommodations); Adams v. Schwartz, 2008 WL 544390 at *8 (E.D. Cal. Feb. 26, 2008) (finding plaintiff had not shown defendants were aware of a risk of harm to plaintiff by way of, for example, previous falls or earlier grievances). Plaintiff alleges that defendants were aware of his serious medical needs because his medical information is in the computer, but he sets forth no facts demonstrating any defendant was aware the shower chair was defective. Indeed, despite multiple opportunities to amend, plaintiff fails to identify the nature of such defect, such that the court cannot determine whether such defect was visible or whether the defect only became evident after plaintiff fell in the shower. Although plaintiff alleges that defendants acted wantonly, despicably, knowingly, willfully, and maliciously, he offers no specific facts demonstrating or supporting such terms. Rather, he speculates that defendants failed to monitor or maintain the shower chair. Plaintiff fails to allege facts showing that any of the defendants had personal knowledge and understood that plaintiff faced an excessive risk of harm, or that any of the defendants deliberately ignored the risk or otherwise acted unreasonably in the face of the risk.

Rather, such allegations attempt to transform a negligence action into an Eighth Amendment violation but with no plausible factual support. Negligence and gross negligence do not constitute deliberate indifference. Farmer, 511 U.S. at 835-36, & n.4. "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." Id. at 836. An accident or inadvertent failure to provide adequate care does not rise to the level of deliberate indifference. See Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); see, e.g., Daniels v. Williams, 474 U.S. 327, 328 (1986) (finding sheriff's deputy not liable under Section 1983 for injuries sustained by inmate who slipped on pillow negligently left on stairs). Even taking as true that the shower chair was defective, an action concerning such defect, without more, is a negligence action. In addition, even if prison staff failed to adequately maintain such

chair, an action concerning such maintenance, absent facts not alleged here, would sound in negligence. The Supreme Court has made clear that the Constitution is not a freestanding "font of tort law" and thus does not give rise to a general duty to prevent harm. Paul v. Davis, 424 U.S. 693, 701 (1976); accord Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005). While the court is sympathetic to plaintiff's pain and injuries sustained from his fall, his allegations fail to rise to the level of deliberate indifference. See Estelle, 429 U.S. at 105 ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."). Because plaintiff's allegations demonstrate only putative negligence claims, plaintiff fails to state a claim for relief under the Eighth Amendment.

        C. Eighth Amendment – Medical Claim

Plaintiff alleges that defendant Dr. Dhaliwal was deliberately indifferent to plaintiff's serious medical needs by failing to follow up on plaintiff's condition when plaintiff notified the LVN on July 30, 2017, that plaintiff's condition had worsened overnight. Plaintiff claims he was vomiting all night as a result of the fall. Plaintiff claims that Dr. Dhaliwal saw plaintiff on July 29, 2017, after plaintiff fell in the shower, and prescribed Tylenol for plaintiff's headache and told plaintiff he would be seen by plaintiff's primary care physician ("PCP") on Monday due to "plaintiff's follow-up schedule[d] visit." (ECF No. 16 at 8.) Plaintiff now claims that Dr. Dhaliwal knew that plaintiff's new injuries would not be taken care of by his PCP on Monday because plaintiff "would only be seen for that follow[-up] only," not for plaintiff's new injuries. Plaintiff alleges that his PCP informed plaintiff "that he would need to see Dr. Dhaliwal about his injury." (Id.) Plaintiff was not seen again by Dr. Dhaliwal, but instead was transferred on an unidentified date to CMF, where he is presently housed. Plaintiff alleges that such failure to follow up caused plaintiff "serious harm," (ECF No. 16 at 8) but does not identify the specific harm caused by the alleged failure to follow up by defendant Dr. Dhaliwal. Plaintiff claims that he was informed by physical therapy at CMF that "his condition could not be helped with therapy," but plaintiff does not identify the specific condition to which he refers. (ECF No. 16 at 8.)

////

1       Where a prisoner's constitutional claim is one for inadequate medical care, he must allege
2  "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical
3  needs." Estelle, 429 U.S. at 106; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The
4  plaintiff must first establish a "serious medical need by demonstrating that [the] failure to treat
5  [his] condition could result in further significant injury or the unnecessary and wanton infliction
6  of pain." Jett, 439 F.3d at 1096 (citation omitted). A medical need is serious "if the failure to
7  treat the prisoner's condition could result in further significant injury or the 'unnecessary and
8  wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (quoting
9  Estelle, 429 U.S. at 104), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d
10 1133, 1136 (9th Cir. 1997).

11      Next, plaintiff must show that the defendant's response to his objectively serious medical
12 need was deliberately indifferent. Jett, 439 F.3d at 1096. To establish deliberate indifference, a
13 prisoner must allege facts to show: (1) a purposeful act or failure to respond to the prisoner's
14 pain or possible medical need; and (2) harm caused by the indifference. Id. "Deliberate
15 indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).
16 "Under this standard, the prison official must not only 'be aware of the facts from which the
17 inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also
18 draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "If a prison official should
19 have been aware of the risk, but was not, then the official has not violated the Eighth
20 Amendment, no matter how severe the risk." Toguchi, 391 F.3d at 1057 (internal quotation and
21 citation omitted).

22      Plaintiff has again failed to demonstrate that defendant Dr. Dhaliwal was deliberately
23 indifferent to plaintiff's serious medical needs. Dr. Dhaliwal was not plaintiff's primary care
24 physician ("PCP"). Rather, it appears that Dr. Dhaliwal was the on-call doctor who treated
25 plaintiff after the fall, but who did not treat plaintiff again. Although plaintiff disagreed with the
26 treatment provided the day of the fall, such disagreement with Dr. Dhaliwal's treatment on that
27 day fails to rise to the level of deliberate indifference. Plaintiff confirms that he saw his PCP the
28 following Monday.

Plaintiff does not allege that the LVN notified Dr. Dhaliwal on July 30, 2017, that plaintiff had vomited all night, or that plaintiff's condition had worsened since Dr. Dhaliwal saw plaintiff on July 29, 2017. Thus, plaintiff fails to allege facts demonstrating that Dr. Dhaliwal was even aware that plaintiff's condition worsened.

That plaintiff's PCP would not treat plaintiff's unidentified "new injuries" does not establish defendant Dr. Dhaliwal's deliberate indifference. Plaintiff speculates that Dr. Dhaliwal "knew" plaintiff would only be seen for the scheduled follow-up. (ECF No. 16 at 8.) But plaintiff's allegations fail to demonstrate that Dr. Dhaliwal even knew plaintiff required follow up for such "new injuries." Moreover, it appears that plaintiff was then transferred to CMF, where Dr. Dhaliwal could not have treated plaintiff. Despite multiple opportunities to amend, plaintiff does not provide a time frame between that Monday and when he was transferred, but concedes he did not see Dr. Dhaliwal again. (ECF No. 16 at 8.)

Therefore, the court finds that the second amended complaint again fails to state an Eighth Amendment claim against defendant Dr. Dhaliwal premised on his alleged deliberate indifference to plaintiff's serious medical needs, and that amendment on this ground would be futile. See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."). Therefore, the undersigned will recommend that defendant Dr. Dhaliwal and plaintiff's putative deliberate indifference claim be dismissed from this action.

## VI. Conclusion

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS RECOMMENDED that:

1. Plaintiff's second amended complaint be dismissed without prejudice; and

2. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections

| | |
|---|---|
| 1 | with the court and serve a copy on all parties.  Such a document should be captioned |
| 2 | "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that |
| 3 | failure to file objections within the specified time may waive the right to appeal the District |
| 4 | Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991). |
| 5 | Dated:  September 23, 2019 |

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/ogle0113.56